NOTICE
Decision filed 02/19/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 160537-U

NO. 5-16-0537

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-CF-353 |
| | ) | |
| MONTRELL SPENCER, | ) | Honorable |
| | ) | John Baricevic, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*: The defendant knowingly and voluntarily pleaded guilty but mentally ill to first degree murder, pursuant to a fully negotiated agreement, and the plea was supported by a factual basis, and any argument that the circuit court erred in denying the defendant's motion to withdraw plea or motion to reduce sentence would be without merit.

¶ 2   The defendant, Montrell Spencer, pleaded guilty but mentally ill to a charge of first degree murder, in exchange for the State's agreeing to a 45-year "cap" on his prison sentence. After a hearing in aggravation and mitigation, the circuit court sentenced the defendant to imprisonment for a term of 31 years. Subsequently, the defendant filed, through appointed postplea counsel, both a motion to withdraw his plea and a motion to

1

reduce his sentence. The circuit court denied both postplea motions. The defendant now appeals from those denial orders. The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks arguable merit, and on that basis it has filed with this court a motion to withdraw as counsel, along with a brief in support thereof. See *Anders v. California*, 386 U.S. 738 (1967). OSAD provided the defendant with a copy of its *Anders* motion and brief. This court gave the defendant ample opportunity to file a written response to OSAD's motion, or to file a memorandum, brief, etc., explaining why his appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Anders* motion and brief, along with the entire record on appeal, and has determined that this appeal does indeed lack merit.

¶ 3                                      BACKGROUND

¶ 4     In April 2014, a St. Clair County grand jury returned a one-count indictment charging the defendant with first degree murder. The indictment alleged, *inter alia*, that the defendant "discharged a firearm" into an occupied vehicle, while knowing that his act created a strong probability of death or great bodily harm, and thereby caused the death of Leon Lucas Jr., a passenger in the vehicle. The circuit court appointed the public defender to represent the defendant.

¶ 5     One year later, on April 14, 2015, the State filed a one-count information charging the defendant with the same offense against the same victim. Unlike the indictment, though, the information did not allege that the defendant discharged a firearm; the information did not include any mention of a firearm. Instead, the information alleged that

2

the defendant "pointed a dangerous weapon" into an occupied vehicle, while knowing that his act created a strong probability of death or great bodily harm, and thereby caused the death of Lucas, a passenger in the vehicle. This court notes that without an allegation that the defendant discharged a firearm and thereby caused another's death, the defendant was no longer at risk of a mandatory 25-year sentence enhancement. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2014).

¶ 6 The same day that the information was filed, the defendant, his public defender, and a prosecutor appeared before the circuit court. The prosecutor drew the court's attention to the newly filed information. The prosecutor and the public defender both advised the court that the defendant wished to waive his right to a preliminary hearing on the information and intended to enter "an open plea" of guilty to first degree murder as charged in the information. The attorneys indicated that the only agreement as to sentencing was that the defendant would be sentenced to imprisonment for a term within the usual 20-to-60-year range for first degree murder. See *id.* § 5-4.5-20(a) (imprisonment for first degree murder shall be for a determinate term of not less than 20 years and not more than 60 years). The court admonished and questioned the defendant, the defendant answered those questions, and the prosecutor presented a factual basis for a guilty plea. The defendant pleaded guilty to first degree murder as charged in the information filed that day. The court accepted the plea, ordered the preparation of a presentence investigation report (PSI), and scheduled a sentencing hearing for June 2015.

¶ 7 Several days after the defendant pleaded guilty, he sent the circuit court a letter stating that he pleaded guilty only because of the emotional distress that he was

3

experiencing at the time. He also complained about the representation provided by his public defender.

¶ 8 In May 2015, the defendant filed with the court two separate, but essentially identical, handwritten *pro se* motions to withdraw his guilty plea. The defendant sought to withdraw his plea "on the ground that defendant was not aware of the matters containing a plea of guilt against him/her." He claimed that his relationship with his public defender had "deteriorated in a way that has forced him/her into taking a guilty plea."

¶ 9 As previously ordered, the probation department submitted to the court a PSI. The PSI showed prior criminal convictions for battery, criminal trespass to state land, and resisting a peace officer. It also showed that the defendant, as a minor, was found guilty of aggravated battery with a firearm and escape.

¶ 10 In June 2015, the scheduled sentencing hearing was not held. Instead, the court appointed Dr. Daniel J. Cuneo to evaluate the defendant's fitness. In August 2015, Dr. Cuneo, a clinical psychologist, submitted a written evaluation. Dr. Cuneo diagnosed the defendant with, *inter alia*, "attention deficit hyperactivity disorder, primarily inattentive type" and "borderline intellectual functioning," but he concluded that the defendant was fit to stand trial.

¶ 11 In October 2015, the court appointed Dr. Cuneo to evaluate whether the defendant qualified for a plea of guilty but mentally ill, and Dr. Cuneo submitted a written report wherein he concluded that the defendant did indeed qualify for such a plea. In the report, Dr. Cuneo opined that the defendant "suffered from a substantial disorder of thought, mood, and behavior *** which impaired his judgment and effected [*sic*] his behavior at the

4

time of the alleged offense, but not to the extent that he was unable to appreciate the criminality of his conduct." According to Dr. Cuneo, "[the defendant's] mental illness was a major factor in contributing to his actions."

¶ 12 On November 12, 2015, the defendant, his public defender, and the prosecutor again appeared before the circuit court. The court asked the defendant about the letter that he had sent to the court, complaining about his public defender's representation, and the defendant indicated to the court that he was satisfied with his public defender's representation and did not wish to pursue the matter raised in the letter. At that point, the prosecutor informed the court that the parties had reached a new agreement, namely, that the defendant would be allowed to withdraw the plea of guilty that he entered on April 14, 2015, that he would plead guilty but mentally ill to the charge, and that his prison sentence would be capped at 45 years. The defendant indicated that he understood the agreement and did not have any questions about it. The court allowed the withdrawal of the April 14, 2015, plea of guilty.

¶ 13 The court proceeded to question and admonish the defendant. In response to the court's queries, the defendant stated that he was 21 years old, and he indicated that he could read and write and that he was not taking any drug or medication. The court asked the defendant whether he understood that he was charged with "murder without the use of a gun," and the defendant answered in the affirmative. The court described the possible penalties for the offense, including imprisonment for 20 to 60 years, and the defendant indicated that he did not have any questions about the possible sentence.

5

¶ 14    The court admonished the defendant that by pleading guilty, he would waive some constitutional rights, and the court proceeded to specify those rights. The court admonished the defendant that he had a right to plead not guilty and a right to have a trial, whether with a jury or without a jury, as he chose, and that his attorney would represent him at a trial. The court admonished the defendant that he had a right to have his attorney cross-examine the State's witnesses at the trial, a right to call his own witnesses at the trial, a right to subpoena witnesses who would not appear voluntarily, a right to remain silent, and a right to require the State to prove guilt beyond a reasonable doubt, and that he was not required to prove his innocence. The court questioned the defendant on the consequences of a guilty plea, and the defendant indicated his understanding that if he pleaded guilty, he would waive all the rights specified and no trial would be held. In response to further queries from the court, the defendant indicated that he did not have any questions about the rights that he would be waiving, and that he wished to waive those rights and proceed to a plea. He also indicated that nobody had made any promises outside the terms of the stated agreement and nobody had threatened him in any way in order to persuade him to plead guilty. The court referred to Dr. Cuneo's written report, and both parties stipulated to Dr. Cuneo's expertise and that he would testify in a manner consistent with the report. The defendant personally indicated that he did not have any question about the report.

¶ 15    The prosecutor stated a factual basis for the plea. According to the prosecutor, the defendant's girlfriend told police interrogators that on the day Leon Lucas Jr. was killed, she saw the defendant use a dangerous weapon against a van as it drove past her house; the defendant, after being informed of his rights by police interrogators, "ma[d]e some

admissions"; a friend of the defendant told police interrogators that he was with the defendant when the defendant used a dangerous weapon toward the van; and a forensic pathologist would testify that Lucas died as a result of the use of the dangerous weapon. The public defender expressed agreement that the State had witnesses who would testify as the prosecutor described.

¶ 16    The defendant, in response to further queries from the court, indicated that he heard the statement of facts and did not have anything to add, and that he understood all that had theretofore happened at the hearing. When the court asked the defendant how he wished to plead, the defendant answered, "Guilty but mentally ill." The court accepted the plea, finding that it was voluntary, and further finding that the defendant understood the consequences of his plea and that there existed a factual basis for the plea.

¶ 17    Without objection by either party, the court immediately proceeded to sentencing. The court referred to the PSI, and both parties stipulated to it. The public defender added that the defendant had reviewed the PSI and had not found any error or omission. The prosecutor called one witness in aggravation, the sister of Leon Lucas Jr., who testified about Lucas's 10 years in the United States Army, his devoted care for his ailing parents, the frequent help that he provided to relatives and strangers, and the "devastating" loss that relatives and friends felt as a result of the "senseless" crime that took Lucas from them. The defendant did not call any witness in mitigation. Both sides presented argument. In a statement in allocution, the defendant apologized to Lucas's family and acknowledged the "hurt and pain" that he had caused them. Afterward, the court discussed factors in aggravation and mitigation, including Dr. Cuneo's belief that the defendant's mental illness

7

was a factor in the crime, a factor that the court found worthy of consideration. The court sentenced the defendant to imprisonment for 31 years, to be followed by mandatory supervised release for 3 years. Finally, the court informed the defendant that he had a right to appeal, and it admonished him about filing a motion to withdraw guilty plea within 30 days.

¶ 18    On December 7, 2015, the defendant filed a *pro se* motion to withdraw his plea of guilty but mentally ill, claiming that the plea "was the result of coercion." In early February 2016, appointed postplea counsel entered his appearance on behalf of the defendant, and the circuit court granted the defendant time to file an amended motion to withdraw the plea or a motion to reconsider sentence.

¶ 19    On April 22, 2016, the defendant, by and through postplea counsel, filed two separate motions—a motion to withdraw the plea of guilty but mentally ill and a motion to reconsider sentence. In the motion to withdraw the plea, the defendant claimed that the circuit court had failed to admonish the defendant as required by Illinois Supreme Court Rule 402 (eff. July 1, 2012) and Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001); that the plea was not knowing and voluntary; and that the factual basis for the plea was insufficient because it failed to include evidence that the defendant was mentally ill at the time of the offense. In the motion to reconsider sentence, the defendant claimed that the circuit court "did not give proper weight" to mitigating factors, including the defendant's mental illness, and that the court "did not consider all sentencing alternatives" and ultimately imposed a prison sentence that was "unduly harsh and unfair." A few days after

8

those two motions were filed, postplea counsel filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016).

¶ 20    On April 26, 2016, the court held a hearing on the defendant's motion to withdraw his plea of guilty but mentally ill.  Both sides presented arguments.  (Neither the court nor the parties mentioned the motion to reconsider sentence.)  The court took the matter under advisement, but later that day, the court entered a written order denying the motion to withdraw the plea.

¶ 21    On November 30, 2016, the court held a hearing on the defendant's motion to reconsider sentence, filed on April 22, 2016.  The defendant's mother testified on behalf of the defendant, and both sides presented argument.  The court took the matter under advisement.  On December 1, 2016, the court entered a written order denying the motion to reconsider sentence.  The defendant filed a timely notice of appeal, thus perfecting the instant appeal.

¶ 22                                    ANALYSIS

¶ 23    This appeal is from a judgment of conviction.  The defendant perfected this appeal after the circuit court denied both his motion to withdraw his plea of guilty but mentally ill and his motion to reduce sentence.  As previously noted, the defendant's appointed attorney on appeal, OSAD, has filed an *Anders* motion and brief, after concluding that this appeal lacks merit.  In its *Anders* brief, OSAD discusses three potential issues in this appeal, each of which this court now considers.

¶ 24    OSAD's first potential issue is whether the circuit court erred when, on April 26, 2016, it denied the defendant's April 22, 2016, motion to withdraw his plea of guilty but

mentally ill, because the defendant did not plead knowingly and the plea was not supported by a factual basis. The determination of whether to grant or deny a defendant's motion to withdraw a guilty plea rests in the circuit court's sound discretion, and the denial of such a motion will not be disturbed on review absent an abuse of that discretion. *People v. Hughes*, 2012 IL 112817, ¶ 32. The circuit court's denial of the defendant's motion was reasonable and does not represent an abuse of discretion.

¶ 25 The record makes clear that the defendant pleaded knowingly and that the plea was supported by a factual basis. In some detail, *supra*, this court has described how the circuit court admonished the defendant, how it questioned the defendant, and how the defendant responded to the court's questions, during the November 12, 2015, hearing at which the defendant pleaded guilty but mentally ill. The circuit court informed the defendant of all the points—nature of the charge, possible penalties, etc.—set forth in Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), and it determined that he understood all these important points. There is no indication that the defendant failed to understand what his case was about or that he failed to understand his rights or the consequences of pleading guilty but mentally ill. Furthermore, the court reasonably determined that the plea was voluntary, after hearing the defendant's answers to its pertinent questions. See Ill. S. Ct. R. 402(b) (eff. July 1, 2012) (determining whether a guilty plea is voluntary). The circuit court complied with Rule 402 and due process. See *People v. Fuller*, 205 Ill. 2d 308, 323 (2002) (substantial compliance with Rule 402 is sufficient to establish due process).

¶ 26 As for the factual basis for the defendant's plea, it was sufficient. The factual basis provided by the State, summarized *supra*, allowed the court to reach the reasonable

10

conclusion that the defendant did indeed point a dangerous weapon into an occupied vehicle, while knowing that his act created a strong probability of death or great bodily harm, and that he thereby caused the death of Leon Lucas Jr., a passenger in the vehicle. In other words, the State's factual basis allowed the court to reach the reasonable conclusion that the defendant committed the acts and possessed the mental state that together constitute the offense to which the defendant pleaded guilty. See, *e.g.*, *People v. Jackson*, 199 Ill. 2d 286, 298-99 (2002). In addition, the report submitted to the circuit court by Dr. Cuneo in October 2015—a report to which the parties stipulated—provided the court with a factual basis for determining that the defendant was indeed mentally ill at the time he committed the murder. See 725 ILCS 5/115-2(b) (West 2014) (criteria for accepting a plea of guilty but mentally ill). There clearly existed a factual basis for the defendant's plea of guilty but mentally ill, permitting the entry of judgment on the plea. See Ill. S. Ct. R. 402(c) (eff. July 1, 2012) (no final judgment on a plea of guilty unless the circuit court first determines that there is a factual basis for the plea).

¶ 27    OSAD's second potential issue on review is whether the circuit court abused its discretion when, on December 1, 2016, it denied the defendant's April 22, 2016, motion to reduce sentence on the ground that the sentence was excessive. The court's denial of the motion cannot represent an abuse of discretion, for the court should not even have considered the motion on its merits. As the record shows, the defendant pleaded guilty but mentally ill pursuant to a fully negotiated plea agreement with the State, an agreement that included a cap of 45 years on the length of his prison sentence. (The statutory maximum for first degree murder was 60 years. See 730 ILCS 5/5-4.5-20(a) (West 2014).) A

11

defendant who pleads guilty in exchange for a cap on the length of his prison sentence effectively agrees not to challenge, as excessive, a sentence that is at or below the cap. *People v. Linder*, 186 Ill. 2d 67, 74 (1999). If the defendant ultimately is sentenced to a prison term that is at or below the agreed-upon cap, he may not challenge the sentence as excessive; the only relief that he can seek is the withdrawal of his plea. *Id.* Here, the defendant was sentenced to imprisonment for 31 years, a term that is below the agreed-upon cap. He moved to withdraw his plea, but his withdrawal motion was denied, as discussed *supra*. Under *Linder*, his only recourse, at that point, was to appeal from the denial of his withdrawal motion. Since his agreement with the State included a sentencing cap, and his sentence was below the cap, he was not entitled to move for a sentence reduction.

¶ 28    OSAD's third and final potential issue is whether postplea counsel filed a sufficient certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016). Rule 604(d) describes the duties that a postplea attorney owes to a defendant who seeks to withdraw his guilty plea, namely, a duty to consult with the defendant, a duty to examine the court file and reports of proceedings, and a duty to amend a *pro se* motion to withdraw guilty plea or to reduce sentence. The rule also obliges postplea counsel to file a certificate indicating that he or she has fulfilled those duties, so as to enable the circuit court to ensure that counsel has reviewed the defendant's claim and has considered all the relevant bases for postplea motions. *People v. Tousignant*, 2014 IL 115329, ¶ 16. Counsel must strictly comply with the certification requirement. *In re H.L.*, 2015 IL 118529, ¶ 8. Here, postplea counsel filed his certificate a few days after he filed, on behalf of the defendant, the motion

to withdraw plea and the motion to reduce sentence. Because counsel's certificate tracked, almost perfectly, the language of Rule 604(d), it was sufficient to establish that counsel fulfilled his duties to the defendant. See, *e.g.*, *People v. Wyatt*, 305 Ill. App. 3d 291, 297 (1999) (the certificate must give some indication that counsel performed the duties required under Rule 604(d)). Accordingly, this court is confident that postplea counsel fulfilled his duties and that the defendant, therefore, had a fair opportunity to challenge his plea of guilty but mentally ill.

¶ 29                                          CONCLUSION

¶ 30    The circuit court did not abuse its discretion, whether in denying the defendant's motion to withdraw his plea of guilty but mentally ill or in denying his motion to reduce sentence, and postplea counsel's certificate of compliance with Rule 604(d) was satisfactory. The plea was made knowingly and voluntarily, the defendant's prison sentence was below the agreed-upon sentencing cap, and the defendant had a fair opportunity to challenge his plea. This appeal does not present any issue of arguable merit. Accordingly, OSAD is granted leave to withdraw as the defendant's attorney on appeal, and the judgment of conviction is affirmed.


¶ 31    Motion granted; judgment affirmed.